UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GLORIA JOHNSON, AS TRUSTEE OF THE NINA J. CUMMINGS REVOCABLE LIVING TRUST, DATED FEBRUARY 11, 2013, AS AMENDED,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 2:22-cv-00196-JCM-EJY<br><br>**REPORT AND RECOMMENDATION**<br><br>RE: Motion to Dismiss (ECF No. 5)<br>and<br>Countermotion For Leave to Amend and to Allow Time for Discovery (ECF No. 9) |

Pending before the Court are Defendant's Motion to Dismiss (ECF No. 5) and Plaintiff's Countermotion for Leave to Amend and to Allow Time for Discovery (ECF No. 9). The Court has considered the Motions, Oppositions, and Replies.

**I.   BACKGROUND**

   A.   <u>Introduction</u>.

Plaintiff Gloria Johnson is a trustee of Nina J. Cummings Revocable Living Trust (the "Trust"). ECF No. 2. Ms. Johnson (also "Plaintiff") brings claims for negligence and breach of contract on behalf of the Trust against Defendant Wells Fargo Bank alleging that Defendant "improperly allowed an unauthorized individual to withdraw funds from Plaintiff's account." ECF No. 1 at 2. Sharon Gindt, the alleged unauthorized individual, withdrew $70,014 in funds by presenting Wells Fargo with a Certification of Trust establishing her authority to withdraw the funds under penalty of perjury. ECF No. 1-1 at 4. Ms. Gindt is Nina J. Cummings' granddaughter and was the special co-administrator of Cummings' estate at the time of withdrawal. ECF No. 5 at 1.

Plaintiff's Complaint alleges Wells Fargo was negligent because it "knew or should have known that an individual purporting to act as a successor trustee of a trust should have a document signed by the grantor of the trust designating that individual to act as a successor trustee or a court Order confirming the individual's appointment as successor trustee." ECF No. 1-1 at 5. Plaintiff alleges Wells Fargo's negligence arises from (1) its duty to "ensure that only a properly authorized

and acting trustee of the Trust was permitted to transact business on the trust-owned Wells Fargo [a]ccounts" and (2) breach of that duty by allowing Ms. Gindt to make the withdrawal. *Id.* at 6. Plaintiff also asserts a breach of contract claim stating "Defendant entered into a valid and enforceable customer deposit agreement with the Grantor on behalf of the Trust in connection with the trust-owned Wells Fargo Accounts. *Id.* at 7. Defendant's Motion seeks to dismiss Plaintiff's Complaint for failure to state a claim on which relief can be granted. ECF No. 5.

      B.      <u>The Parties' Arguments</u>.

            *i.*      *Defendant's Motion*.

Defendant argues that subsections of Nevada Revised Statutes ("NRS") Chapter 164 and the Uniform Fiduciaries Act (the "UFA" or the "Act"), as codified by Nevada state law in NRS 162.010-.310, bar Plaintiff's claims. *Id.* at 5.

NRS 164.430.1 states:

> A person who acts in reliance upon a certification of trust without knowledge that the representations contained therein are incorrect is not liable to any person for so acting. A person who does not know that the facts contained in the certification are incorrect may assume without inquiry the existence of the facts contained in the certification. Knowledge may not be inferred solely from the fact that a copy of all or part of a trust instrument is held by the person relying upon the certification.

NRS 164.430.1. Defendant argues that a plain reading of this statute nullifies Plaintiff's claim unless she can demonstrate Wells Fargo had actual knowledge that Ms. Gindt was not authorized to make the withdrawal. ECF No. 5 at 6. Defendant contends that NRS 164.430, permitting trustees to use certifications of trusts "in lieu of" trust documents, is "designed to facilitate a trustee's ability to conduct business without being forced to produce the trust instruments while at the same time limiting liability for those who rely on these certifications." *Id.* Defendant points to NRS 164.420 stating that "the person to whom the certification is presented *may* require copies or excerpts" of the trust documents (emphasis added). Defendant argues this permissive language contradicts Plaintiff's contention that Wells Fargo was negligent because Ms. Gindt did not provide Wells Fargo with "document[s] signed by the Grantor in which Ms. Gindt was designated to serve as successor trustee of the Trust." *Id.* at 4 *citing* ECF No. 1-1 ¶¶ 29-30.

Defendant next points to the language of NRS 164.440, which states that "[a] person's failure to demand a certification of trust may not be considered to be an improper act by the person and no inference as to whether the person has acted in good faith may be drawn from the failure to demand a certification of trust." NRS 164.440 also makes clear that this section of the statute "creates no implication that a person is liable for acting in reliance upon a certification of trust under circumstances where the requirements of NRS 164.400 to 164.430, inclusive, are not satisfied."

Defendant next refers the Court to the UFA, codified in NRS 162.010-.310, and the accompanying case law barring Plaintiff's claims. ECF No. 5 at 7. Defendant relies on NRS 162.030, which states:,

> A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary; and any right or title acquired from the fiduciary in consideration of such payment or transfer is not invalid in consequence of a misapplication by the fiduciary.

Defendant argues this statute stands for the proposition that "the UFA limits banks' liability to principals and third parties when dealing with fiduciary accounts by precluding negligence-based actions and requiring actual knowledge, bad faith, or conscious purposeful misconduct on bank's part." *Id.*

Quoting *Guild v. First Nat'l Bank of Nevada*, 553 P.2d 955, 958 (Nev. 1976), Defendant claims that "the UFA 'was clearly meant to relax the standards of care owed by banks to principals and third parties when dealing with fiduciary accounts.' … As such, there is no longer any common law negligence claim arising from this relationship, as '[l]iability cannot be predicated on a showing of lack of due care, or negligence.'" *Id.* at 12. Defendant concludes that the UFA and supporting law require a showing of actual knowledge or bad faith before a bank may be held liable for the misappropriation of trust funds. *Id.*; *Guild*, 553 at 958 ("In the absence of such 'scienters' or 'conscious purposeful misconduct,' banks may not be held liable."). Defendant emphasizes the policy rationale for this rule: imposing a duty of care on banks to inquire into the nuances of trustee designations and "investigate" all individuals presenting themselves as the rightful trustee, and holding banks liable for the "misconduct or malversation of its depositors" would heavily interfere

with the bank's ability to conduct business. ECF No. 5 at 13, *citing Bogert's The Law of Trusts and Trustees,* § 908.

Defendant states that Plaintiff's claims are also barred by the economic loss doctrine; a common law rule under which recovery is unavailable to a party who incurs economic loss only (no physical damage to the person or their property) based on another party's negligent acts. ECF No. 5 at 10. Finally, Defendant argues that both of Plaintiff's claims otherwise fail as pled because the contract claim fails to allege the existence of a contract or contractual provisions breached and the negligence claim fails to identify a duty. *Id.* at 2, 11.

     *ii.*  *Plaintiff's Opposition.*

Plaintiff argues that Wells Fargo's interpretation of Nevada state law is erroneous. ECF No. 8 at 2. Plaintiff contends that Wells Fargo's position would allow any individual, regardless of actual authority, to withdraw funds from a trust account based only on the individual's willingness to sign a form. *Id* at 1. According to Plaintiff, NRS 164.430, on which Wells Fargo relies, is inapplicable in light of NRS 164.400. *Id.* at 4. NRS 164.400 provides that "a trustee may present a certification of trust to any person, in lieu of a copy of any trust instrument, to establish the existence or terms of the trust." Plaintiff argues this language limits the subsequent statutory protections in NRS 164.420, 164.430, and 164.440 to situations only where "*a trustee*" signs the certification of trust, rather than an individual like Ms. Gindt. *Id.* Plaintiff characterizes Ms. Gindt as a "total stranger," and emphasizes that Ms. Gindt has no connection to the trust whatsoever. *Id.* at 4. Plaintiff argues that "[i]f the Nevada legislature intended to provide protection to third parties who receive a purported certification of trust signed by a total stranger to the trust …, the legislature could have easily done so by replacing the term 'trustee' [with] person." *Id.* at 5. Plaintiff argues that Wells Fargo "took the risk that it was transacting business with a total stranger." *Id.*

According to Plaintiff, the UFA codified in NRS 162.010-.310 is also inapplicable because its protections only extend to mistakes as to "the application of trust-owned funds" in the case of an authorized fiduciary, rather than insulating Wells Fargo from liability where the withdrawing individual is not a fiduciary in the first place. *Id.* at 6. Plaintiff argues NRS 162.030 creates a statutory duty of good faith that "imposes potential liability for negligence" when failing to fulfill

4

that duty. *Id.* Plaintiff asserts Wells Fargo had an "independent duty to exercise ordinary care" to its trust customers to "ensure that a total stranger does not walk out the door of the bank with trust-owned funds." *Id.* at 8. According to Plaintiff, this duty arises out of NRS 104.4103 precluding bankers and depositors from disclaiming "a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure." *Id.* Plaintiff describes this as a "duty to ensure that only a properly authorized and acting trustee of the Trust was permitted to transact business" on the accounts, thereby imposing a "duty to implement policies and procedures" to that end. *Id.* at 9.

In response to Defendant's economic loss doctrine argument, and in support of her negligence claim, Plaintiff argues for an exception as contemplated in *Giles v. GMAC*, 494 F.3d 865 (9th Cir. 2007). *Id.* at 10. Plaintiff specifically points to language in *Giles* finding Nevada law "does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff." *Giles*, 494 F.3d at 879. Plaintiff contends that "strong countervailing considerations weigh in favor of imposing liability." ECF No. 8 at 11, *citing Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 125 Nev. 66, 73, 206 P.3d 81, 86 (2009). Plaintiff states that policy considerations favor imposing liability on Wells Fargo because "[i]f Wells Fargo has no duty to do anything but accept a person's word for it, any person could withdraw trust-owned funds from a Wells Fargo account as long as the person asserts that he or she is the trustee." *Id.*

With respect to Defendant's argument that she does not state a claim for breach of contract, Plaintiff asserts that her Complaint "meet[s] the basic notice requirements of FRCP 8(a) and do[es] not fall within the specific categories of claims that require heightened pleading standards under FRCP 9." *Id.* at 13. Plaintiff's claim alleges "a short and plain statement of Plaintiff's relationship with Wells Fargo, that Plaintiff and Wells Fargo are party to a customer deposit agreement, and that Wells Fargo breached its agreement with Plaintiff" in allowing Ms. Gindt to make the withdrawal. *Id.* "To the extent that the Court finds that Plaintiff must cite to specific terms and provisions of the appliable customer agreements and contracts," Plaintiff directs the Court to her Countermotion (ECF No. 9).

### iii. Defendant's Reply.

In its Reply, Defendant argues that although NRS 164.400 "does not permit non-trustees to present certifications of trust," a plain language reading of the law clearly shields third parties from liability where such parties inadvertently and without actual knowledge mistake a non-trustee for an authorized individual. ECF No. 10 at 2. Defendant contrasts Nevada's law with a comparable provision in Iowa state law. The applicable Iowa statute states: "A person who acts *in reliance upon a certification of trust after taking reasonable steps to verify the identity of the trustee* and without knowledge that the representations contained in the certification are incorrect is not liable to any person for so acting." ICA 633A.4604.5 (emphasis added). *Id.* at 3-4. Unlike the Iowa statutory provision, Defendant argues Nevada law holds "a person relying on a certification of trust is permitted to assume without inquiry that *all* representations therein are correct, including representations about identify." *Id.* at 4. Defendant argues the obligation to conduct inquiry into the identity of the individual presenting as a trustee ends with fulfilling the actual knowledge requirement. *Id.* Thus, under Nevada law, Defendant argues its duty to inquire into the identity of an individual presenting as a trustee is limited. Defendant points to NRS 164.430.2, which references transactions "entered into by a trustee and a person acting in reliance upon a certification of trust," as evidence that a trustee and person acting in reliance upon a certification of trust cannot mean the same individual. If they were, the language is redundant. *Id.* Defendant emphasizes additional policy considerations behind NRS 164.400-440; that is, NRS 164.440 prohibits drawing an inference of bad faith from a bank's failure to request the discretionary certification of trust, and instead incentivizes banks to request certifications of trust so as to gain the "significant protections under NRS 164.430.1." *Id.* at 5-6.

Replying to Plaintiff's economic loss case law, Defendant argues against adopting a new exception here. *Id.* at 6. Defendant contends the law on which Plaintiff relies address intentional torts only, which when duplicative of breach of contract claims, are also barred by the economic loss doctrine. *Id.*, citing *FLS Transp. Servs. (USA) v. Casillas*, Case No. 3:17-cv-00013-MMD-VPC, 2017 WL 4127980, at *4 (D. Nev. Sept. 18, 2017). Addressing Plaintiff's contract claim, Defendant cites law holding breach of contract claims must be dismissed where the contract fails to identify the

1  specific provisions breached.  *See, e.g.*, *Davenport v. GMAC Mortg.*, 129 Nev. 1109 (2013); *Herold v. One W. Bank*, Case No. 2:10-cv-02204-KJD, 2011 WL 4543998, at *2 (D. Nev. Sept. 2011); *Silvas v. GMAC Mortgage, LLC*, Case No. CV-09-265-PHX-GMS, 2009 WL 4573234, at *5 (D. Ariz. 2010).

Defendant maintains that Ms. Gindt was a fiduciary at the time of the withdrawal because she was "appointed special administrator of the Estate," but allows that the UFA "may not directly apply." ECF No. 10 at 10-11. Nonetheless, Defendant argues that even if the Nevada statutes in which the UFA is codified (NRS 162.010-.310) do not apply, the UFA supports Defendant's reading of NRS 164.430.1. *Id*. at 10. Defendant argues that the UFA complements NRS 164.430.1 in that the narrower protections arguably provided under the UFA—shielding third parties from liability where "the fiduciary is committing a breach of his or her obligation as fiduciary" (NRS 162.050)—implies that the protections in NRS 164.430.1 are broad. *Id*. at 11. Defendant contends that the UFA limits the protections afforded to third parties to mistaken representations about the *scope* of a fiduciary's authority; whereas, NRS 164.430.1 contains no similar limitation and thus applies where third parties without actual knowledge mistakenly rely upon an individual's false representation as to *identity*. *Id*.

   C.   <u>Plaintiff's Countermotion</u>.

Plaintiff argues that if the Court is not inclined to deny Defendant's Motion to Dismiss, Plaintiff should be permitted to conduct discovery on her breach of contract claim. ECF No. 9. Plaintiff also moves for leave to amend her Complaint "if the Court finds that the Uniform Fiduciaries Act may be applicable to the actions complained of." *Id*. at 1. Plaintiff seeks leave "to allege applicable violations of the Uniform Fiduciaries Act." *Id*. Plaintiff alleges the existence of "agreements and contracts" into which Ms. Cummings entered with Defendant "at some point prior to 2015." *Id*. at 3. Plaintiff says she is informed and believes Defendant is in possession of the documents. *Id*. Plaintiff emphasizes the difficulty of her position, accuses Defendant of withholding the applicable contracts from her, and argues that early discovery is "the only practical and equitable solution." ECF No. 13 at 3.

     Defendant opposes Plaintiff's Motion for Leave because Plaintiff failed to comply with the Local Rules; because there is no basis for granting early discovery; and because amendment would be futile. ECF No. 11 at 3. LR 15-1(a) requires a party moving for leave to amend to "attach the proposed amended pleading to a motion seeking leave to the court to file an amended pleading." LR 15-1(a); *Cadeaux v. Las Vegas Metro Police Dep't*, Case No. 2:19-cv-01584-JAD-VCF, 2021 WL 3115182 (D. Nev. July 22, 2021) ("The failure to attach a complete proposed amended pleading is sufficient for the court to deny a party's motion to amend his claim."). As such, Defendant moves for dismissal of the Countermotion under LR 15-1(a). Defendant further argues that Plaintiff has not met her "pre-filing obligation to possess and allege facts which plausibly state a claim for relief" and is not entitled to discovery. ECF No. 11 at 2, *quoting Conkin v. Univ. of Wash. Med.*, Case No. C18-0090-RSL, 2018 WL 2193193, at *1 (W.D. Wash. May 14, 2018). Finally, Defendant argues that Plaintiff's claim for violations of the UFA would be futile because "NRS 164.430 protects third parties who rely on a certification of trustee, regardless [of] whether the contents are accurate." ECF No. 11 at 3.

## II.    DISCUSSION

    A.    <u>Legal Standard Applicable to Defendant's Motion to Dismiss</u>.

     A complaint must include "[a] short and plain statement of … claim[s] showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). When considering a motion to dismiss, the Court will accept all well-pleaded allegations of material fact as true, while legal conclusions are not entitled to the same presumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A plaintiff must do more than assert "[t]hreadbare recitals of the elements of a cause of action." *Id*. at 678 (internal citation omitted). Instead "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal citation and quote marks omitted). A facially plausible claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal citation omitted). The U.S. Supreme Court's decision in *Iqbal* states "that to satisfy Rule 8's requirements, a complaint's allegations must cross 'the line from conceivable to plausible.'" *Hester v. Stout Management*, Case No. 2:20-cv-

02115-APG-VCF, 2020 WL 7427522, at *1 (D. Nev. Dec. 18, 2020) *citing Iqbal*, 556 U.S. at 680 *citing Twombly*, 550 U.S. at 547.

  B. <u>Legal Standard Applicable to Plaintiff's Countermotion to Amend</u>.

  Federal Rule of Civil Procedure 15(a)(1) states that "[a] party may amend its pleading once as a matter of course" either "before being served with a responsive pleading" or "within 21 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar." If Rule 15(a)(1) does not apply, the party seeking to amend must obtain the opposing party's written consent or court leave to file an amended pleading. Fed. R. Civ. P. 15(a)(2). Well settled law establishes that a motion for leave to amend brought pursuant to Rule 15(a)(2) should be granted freely "when justice so requires." When a party seeks court permission to file an amended pleading, the decision whether to grant leave "lies within the sound discretion of" that court. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185-86 (9th Cir. 1987) (internal citation omitted). The amendment standard is "applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).

  In considering whether to grant or deny a motion seeking leave to amend a complaint, the Court considers whether there is: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and, (5) whether plaintiff has previously amended his complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Here, Plaintiff has not previously amended her Complaint, her Motion to Amend was made in response to a motion to dismiss evidencing no undue delay or bad faith, there is no prejudice to the opposing party that will arise from amendment and, as discussed below, Plaintiff's claims are not necessarily futile. While the Court recommends granting Defendant's Motion to Dismiss in part, the Court also recommends granting Plaintiff the opportunity to file an amended complaint.

  C. <u>NRS 164.430.1 Bars Plaintiff's Negligence Claim as Pleaded</u>.

  A court's statutory interpretation analysis begins with the statute's plain language. *Prescott v. Slide Fire Sols.*, LP, 341 F. Supp. 3d 1175, 1188 (D. Nev. 2018). A reading of the plain language in NRS 164.430.1 leads the Court to find Plaintiff may not recover from Defendant without alleging

Defendant had actual knowledge that Ms. Gindt was not authorized to withdraw from the trust account. NRS 164.430.1 is not ambiguous. This statute states: "A person who acts in reliance upon a certification of trust without knowledge that the representations contained therein are incorrect" is "not liable to any person for so acting." NRS 164.430.1. The statute does not provide for exception to the liability bar for specific types of misrepresentations or circumstances. Rather, the statutory language encompasses all inaccuracies contained in a certification of trust as long as those inaccuracies were unknown. The following statutory language confirms this finding: "A person who does not know that the facts contained in the certification are incorrect *may assume without inquiry* the existence of the facts contained in the certification." *Id.* (emphasis added).

The law plainly places particular emphasis on the absence of scrutiny Defendant was required to exercise and establishes that knowledge must be actual rather than constructive for liability to attach.[1] The language clearly establishes that absent actual knowledge that a representation is false, the party relying on the representation is shielded from liability. The final sentence of the provision affirms the level of requisite knowledge, for "[k]nowledge *may not* be *inferred* solely from the fact that a copy … of the trust instrument is held by the person relying upon the certification." NRS 164.430.1 (emphasis added). Whether this language is ultimately fair, the language is unambiguous: no inquiry into the accuracies of the facts is required (or even recommended) under Nevada statutory law, and the person relying on the facts, even when inaccurate, may assume the facts are accurate despite no inquiry.

Thus, when Ms. Gindt signed the certification of trust under penalty of perjury stating she was a trustee authorized to make the withdrawal, she made a factual representation upon which Wells Fargo was entitled to rely, without inquiry, even if that fact ultimately proved incorrect. And, Plaintiff pleading that Wells Fargo "knew or should have known" Ms. Gindt was not who she maintained she was (ECF No. 1-1 at 5) does not state a claim. First, Plaintiff's Complaint alleges no facts at all to support her conclusory assertion that "Defendant knew" Ms. Gindt was not a rightful trustee. Second, Plaintiff focuses on the argument that Defendant "should have known" better

---

[1] As Defendant points out, this construction is also consistent with Nevada's adoption of the Uniform Commercial Code ("UCC"). According to the UCC as codified in Nevada law, "Knowledge means actual knowledge. Knows has a corresponding meaning." NRS 104.1202.2.

because Ms. Gindt "should have a signed copy of the Trust." ECF No. 1-1 at 5. However, the plain language of NRS 164.430.1 precludes recovery on the basis of this exact argument.

Plaintiff argues that NRS 164.400 requires "a trustee," not someone representing that he/she is a trustee, to "present a certification of trust to any person, in lieu of a copy of any trust instrument, to establish the existence or terms of the trust." NRS 164.400. But, this is a tortured reading of NRS 164.400. The language of the statute provides for the use of a certification of trust *in lieu of* a copy of the trust. This creates a system that allows the certification of trust to stand on its own unless, as stated in NRS 164.430.1, a party knowingly accepts misrepresentations. In contrast, a party who unknowingly make the same mistake is explicitly shielded from liability under the statute.

When construing the plain meaning of a statute it is a "cardinal principle" that a statute should be construed so that "no clause, sentence, or word shall be superfluous, void, or insignificant." *United States v. Estrada-Iglesias*, 425 F. Supp. 3d 1265, 1273 (D. Nev. 2019). The risk Plaintiff identifies—that an individual will make a factual misrepresentation regarding his or her identity and make an unauthorized withdrawal—is a consequence of a statutory scheme that allows third parties to present a certification of trust in place of the trust document. Had the Nevada legislature wanted to allocate the burden of risk on the third party, it would not have created a statutory scheme in which there was no duty whatsoever to inquire into facts upon receipt of a signed certification of trust. *See* NRS 164.430.1; *see also United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013) ("Statutory interpretations which would produce absurd results are to be avoided."). The Nevada legislature would not have drafted legislation shielding third parties from liability absent actual knowledge of a false representation.

Plaintiff argues NRS 164.420 gives third parties permission to "require copies" of the trust in order to ensure the third party does not transfer funds to an imposter, and without which such parties expose themselves to liability. ECF No. 8 at 5, *citing* NRS 164.420 ("the person to whom the certification is presented *may require* copies of excerpts from any trust instrument which designate the trustee or confer upon him or her the power to act in the pending transaction") (emphasis added). But this is not consistent with the language of the statute. The word "may" is not logically or plainly read to create a mandatory provision. The plain meaning of "may" is permissive.

*Broam v. Bogan*, Case No. CV-N-00-0389-ECF (RAM), 2006 WL 8441923, at *5 (D. Nev. Dec. 14, 2006) (citing *Webb v. Sloan*, 330 F.3d 1158, 1165 (9th Cir. 2003)); *see also United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion."); *Woolls v. Superior Ct.*, 127 Cal. App. 4th 197, 202 (2005) ("'may not' is prohibitory, but 'may' is permissive"); *In re Clark*, 536 B.R. 450, 456 (D. Haw. 2015) ("Hawaii courts have interpreted the use of 'may' in statutes as permissive, rather than mandatory, which accords with the word's plain meaning.") (internal citation omitted).  Thus, while the statute does not prevent a bank from asking for something more than a certification of trust, the language of the statute plainly creates a permissive standard with which Defendant complied.

Plaintiff's requested interpretation creates a mandatory provision that would render the use of "may" and "in lieu of" in NRS 164.420 superfluous and turn permissive language on its head. *Shoner v. Carrier Corp.*, 30 F.4th 1144, 1149 (9th Cir. 2022) (When interpreting statutory provisions, Courts presume Congress "did not intend to make any portion of a statute superfluous."). As Defendant points out, the statute does not encourage or promote allocating funds to unauthorized individuals, but it does take a clear position as to the third party's liability in the event a misrepresentation results in an unknowing transfer of funds to such an individual.  The third party "is not liable to any person" for acting on the representation without knowledge.  ECF No. 10 at 4; NRS 164.430.1.

Plaintiff's policy arguments also do not overcome the plain language of NRS 164.400 and related provisions.  The plain language of a statute is conclusive as to its meaning when the statutory scheme is coherent and consistent.  *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013), as amended (Aug. 28, 2013).  The statutory scheme here is not only coherent and consistent, but supported by countervailing policy considerations such as a hesitancy to require bank personnel to "perform investigative or 'detective' work" in their day-to-day operations.  *Bogert's The Law of Trusts and Trustees*, § 908; *Guild*, 553 P.2d at 958 (1976) (noting the UFA "was clearly meant to relax the standards of care owed by banks to principals and third parties when dealing with fiduciary accounts").  This is especially true given that Ms. Gindt is not, as Plaintiff would have the Court believe, a "perfect stranger" to the Trust but a relative of Ms. Cummings with a legal relationship to

her estate. *Compare* ECF Nos. 8 at 1 *and* 10 at 1. In sum, under well-established law, the plain language of the statute governs. Plaintiff cannot prevail on her negligence claim without including facts sufficient to allege actual knowledge.

Because Plaintiff's negligence claim fails under a plain language reading of NRS 164.430.1, the Court does not reach whether the common law economic loss doctrine constitutes an additional bar to recovery. Nevertheless, the Court notes that the case law upon which Plaintiff relies addressed intentional torts, not ordinary negligence. *Giles*, 494 F.3d at 879 (the law "does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's *intentional* breach of that duty caused purely monetary harm to the plaintiff.") (emphasis added); *CH2E Nevada LLC v. Mahjoob*, Case No. 2:15-cv-00694-JCM-NJK, 2015 WL 6438297 (D. Nev. Oct. 21, 2015) (the economic loss doctrine "only bars a plaintiff from recovering 'purely economic losses' as a result of an unintentional tort"). Given that NRS 164.430.1 confirms Defendant's duty here does not extend beyond refraining from knowingly relying on false representations contained in a certificate of trust, and given Plaintiff does not allege an "intentional breach," *Giles* is inapposite.

### D.  Plaintiff's Cause of Action for Breach of Contract Fails to State a Claim.

The elements of a breach of contract claim in Nevada are as follows: a plaintiff must demonstrate (1) the existence of a valid contract, (2) that plaintiff performed or was excused from performance, (3) that the defendant breached, and (4) that the plaintiff sustained damages. *Calloway v. City of Reno*, 1993 P.2d 1259, 1263 (2000); *Walker v. State Farm Mut. Auto. Ins. Co.*, 259 F.Supp.3d 1139, 1145 (D. Nev. 2017). In her Complaint, Plaintiff alleges "Defendant entered into a valid and enforceable customer deposit agreement with the Grantor on behalf of the Trust in connection with the trust-owned Wells Fargo Accounts." ECF No. 1-1 at 7. State and federal law in this district hold that a breach of contract complaint is subject to dismissal where it fails to specify particular provisions in the contract Defendant allegedly breached. *Davenport v. GMAC Mortg.*, 129 Nev. 1109 (2013); *Herold v. One W. Bank*, Case No. 2:10-cv-02204-KJD, 2011 WL 4543998, at *2 (D. Nev. Sept. 29, 2011). In her pleading, Plaintiff generally alleges the existence of an agreement between Defendant and the trust, ECF No. 13 at 2, but does not specify what provision

in that alleged contract Defendant supposedly breached.  As such, Plaintiff's allegation of breach of contract is conclusory and fails to state a claim.  *Iqbal*, 556 U.S. at 679.

   E. <u>Countermotion for Leave to Amend and to Allow Time for Discovery</u>

  Despite the deficiencies identified above, the Court finds Plaintiff may be able to assert facts allowing her claims to proceed.  That is, absent a finding that there is "no set of facts" that could be pleaded, at this stage of the litigation, leniency militates in favor of granting a motion for leave to amend.  *Puget Soundkeeper All. v. Tacoma Metals Inc.*, Case No. C07-5227-RJB, 2008 WL 4455705, at *2 (W.D. Wash. Jan. 23, 2008).  (Emphasizing "[t]he Court should *freely* grant leave to amend the complaint").  For this reason, the Court recommends Plaintiff be allowed to file an amended complaint in which she may attempt to plead claims upon which relief may be granted.

  That said, the Court finds Plaintiff is not entitled to early discovery.  Having failed to plead sufficiently under Rule 8 and the *Iqbal*/*Twombly* standard well established in the federal courts, allowing Plaintiff to now substantiate her allegations through the discovery process would "put[] the cart before the horse insofar as [Plaintiff] seeks discovery so that [s]he can adequately allege a claim for relief."  *Iqbal*, 556 U.S. at 678.  Plaintiff points out that Defendant does not deny the existence of a valid contract. ECF No. 13 at 2.  However, this fact is immaterial as Plaintiff is responsible for pleading facts sufficient to support the causes of action in a complaint.  The Court denies Plaintiff's request to conduct discovery on her contract claim.[2]

## III. RECOMMENDATION

  Accordingly, IT IS HEREBY RECOMMENDED that Defendant's Motion to Dismiss (ECF No. 5) be GRANTED as follows.

- Plaintiff's First Claim for Relief for negligence be dismissed without prejudice with leave to amend; and,

- Plaintiff's Second Claim for Relief for Breach of Contract be dismissed without prejudice with leave to amend.

---

[2]  Plaintiff's Countermotion requests the Court to make a finding regarding whether the UFA "may be applicable to the actions complained of in the Complaint" and in the event the Court finds the UFA applies, "for leave to amend to allege a violation of the UFA."  ECF No. 9 at 4.  The Court finds that the UFA applies here.  *Dunham Tr. Co. as Tr. of Darrell N. Garmann Testamentary Tr. 2012 v. Wells Fargo Bank, N.A.*, Case No. 318-cv-00181-LRH-WGC, 2019 WL 489095, at *4 (D. Nev. Feb. 7, 2019) ("the UFA displaced any common law negligence claim involving a fiduciary and a bank.").  Because Plaintiff does not attach a proposed amended complaint, the Court cannot assess whether amendment is appropriate under Rule 15(a)(2).

14

IT IS FURTHER RECOMMENDED that Plaintiff's Countermotion to Amend (ECF No. 9) be GRANTED consistent with the terms of this Order.

IT IS FURTHER RECOMMENDED that Plaintiff be granted the opportunity to file a proposed amended complaint within **twenty-one (21)** days of the date this Report and Recommendation unless an objection is filed.

IT IS FURTHER RECOMMENDED that Plaintiff's Motion to Allow Time for Discovery (ECF No. 9) is DENIED.

Dated this 20th day of May, 2022.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).